IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

UNITED STATES OF AMERICA,

    v.                                                      Criminal No. 3:07cr263 (DJN)

ASTON DENNISTOR SAMUELS, JR.,
Defendant.

## MEMORANDUM OPINION

This matter comes before the Court following the parties' briefing requested by the Court. Defendant Aston Dennistor Samuels, Jr. ("Defendant"), a federal inmate proceeding with counsel, filed a motion pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion," (ECF No. 80)), arguing that his firearm convictions cannot stand under *Johnson v. United States*, 135 S. Ct. 2551 (2015). On September 25, 2019, the Court granted the § 2255 Motion and directed the parties to file their position as to the appropriate remedy. (ECF No. 97). For the reasons set forth below, the Court finds that voiding the Plea Agreement, setting aside Defendant's guilty pleas and permitting the Government to pursue the charges in the Second Superseding Indictment constitutes the appropriate remedy, should Defendant pursue his § 2255 Motion to conclusion and vacate his firearm convictions.[1]

## I. PROCEDURAL HISTORY

### A. The Second Superseding Indictment

On December 18, 2007, the Government filed a ten-count Second Superseding Indictment (the "Indictment"), charging Defendant with multiple counts of obstructing, delaying,

---

[1] The Court corrects the spelling and capitalization in the quotations from the parties' submissions.

and interfering with commerce by robbery ("Hobbs Act robbery"), and using, carrying, and brandishing a firearm during and in relation to a crime of violence. (Indictment at 1–7.) Specifically, the Indictment charged Defendant with the following crimes: conspiracy to commit Hobbs Act robbery (Count One); the Hobbs Act robbery of the Red, Hot & Blue Restaurant in Henrico County, Virginia (Count Two); using, carrying, and brandishing a firearm during and in relation to a crime of violence, to wit, the conspiracy to commit Hobbs Act robbery charged in Count One and the Hobbs Act robbery charged in Count Two (Count Three); the Hobbs Act robbery of the McDonald's Restaurant at 3410 West Cary Street in Richmond, Virginia (Count Four); using, carrying, and brandishing a firearm in relation to a crime of violence, to wit, the conspiracy to commit Hobbs Act robbery charged in Count One and the Hobbs Act robbery charged in Count Four (Count Five); the Hobbs Act robbery of the McDonald's Restaurant at 6808 Midlothian Turnpike in Richmond, Virginia (Count Six); using, carrying, and brandishing a firearm during and in relation to a crime of violence, to wit, the conspiracy to commit Hobbs Act robbery charged in Count One and the Hobbs Act robbery charged in Count Six (Count Seven); the attempted Hobbs Act robbery of the Up Top Pizza Restaurant in Richmond, Virginia (Count Eight); using, carrying, and brandishing a firearm during and in relation to a crime of violence, to wit, the conspiracy to commit Hobbs Act robbery charged in Count One and the attempted Hobbs Act robbery charged in Count Eight (Count Nine); and, possession of a firearm by a convicted felon (Count 10). (Indictment at 1–7.)

**B.     The Plea Proceedings**

On February 14, 2008, pursuant to a Plea Agreement, Defendant pled guilty to Counts One, Three, and Seven. ("Plea Agreement" (ECF No. 36) ¶ 1.) The Plea Agreement specified that the Hobbs Act conspiracy charged in Count One served as the predicate crime of violence

for the firearm charges in Counts Three and Seven. (*Id.*) Specifically, the relevant portion of the Plea Agreement provided:

> The defendant agrees to plead guilty to Counts One, Three, and Seven of the Second Superseding Indictment.
>
> . . . .
> b. Count Three charges that the defendant, in furtherance of a crime of violence for which he may be prosecuted in a court of the United States, to wit: *conspiracy to interfere with commerce by threats and violence*, did knowingly and unlawfully possess and brandish, and did aid, abet, counsel, command, induce and cause to be brandished, firearms, in violation of Title 18, United States Code, Section 924(c) . . . .
> c. Count Seven charges the defendant, in furtherance of a crime of violence for which he may be prosecuted in a court of the United States, to wit: *conspiracy to interfere with commerce by threats and violence*, did knowingly and unlawfully possess and brandish, and did aid, abet, counsel, command, induce, and cause to be possessed and brandished, firearms, in violation of Title 18, United States Code, Section 924(c).

(*Id.* (emphasis added).) Critically, the Plea Agreement omitted any reference to a non-conspiracy Hobbs Act robbery as a predicate crime of violence for Counts Three and Seven.

The Plea Agreement further provided that:

> The United States will not further criminally prosecute the defendant in the Eastern District of Virginia for the specific conduct described in the indictment or statement of facts, or use any statements made by defendant to prosecute him for other crimes, other than homicides, occurring during the span of the conspiracy as charged in the Second Superseding Indictment.

(*Id.* ¶ 11.) Finally, the parties agreed that "[t]his written agreement constitutes the complete plea agreement between the United States, the defendant, and the defendant's counsel." (*Id.* ¶ 20.)

### C. Sentencing and Pertinent Post-Conviction Proceedings

On May 30, 2008, the Court sentenced Defendant to 130 months on Count One, 84 months on Count Three, and 300 months on Count Seven, all to be served consecutively. (ECF No. 54, at 2.)

On June 13, 2016, Defendant filed this § 2255 Motion, arguing that the Court must vacate his convictions and sentences on Counts Three and Seven, because of the Supreme Court's

3

decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015). Following the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019), and the Fourth Circuit's decision in *United States v. Simms*, 914 F.3d 229 (4th Cir.), *cert. denied*, 140 S. Ct. 304 (2019), this Court determined that conspiracy to commit Hobbs Act robbery could no longer serve as a valid predicate crime of violence for a § 924(c) charge. Furthermore, the Court found that Defendant had established, as set forth in the Plea Agreement, that only the conspiracy to commit Hobbs Act robbery charged in Count One served as the predicate for his convictions in Counts Three and Seven. Accordingly, the Court granted the § 2255 Motion. (*See* ECF Nos. 96, 97.) Notably, the Court's Order did not at that time actually vacate Defendant's convictions and sentences with respect to Counts Three and Seven,[2] but held that relief in abeyance pending further briefing from the parties with respect to whether a full resentencing or a corrected judgment constituted the appropriate relief.

### D. The Parties' Positions as to the Appropriate Remedy

Initially, in arguing for the appropriate remedy, Defendant requested that the Court "enter a corrected judgment in this case reflecting the Court's Order granting his motion pursuant to 28 U.S.C. § 2255 and leaving his sentence on Count One intact." (ECF No. 98, at 1.) The Government responded that, "Counts Three and Seven of the Indictment remain valid, and the next steps in this case will depend on defendant's position about whether he will enter new guilty pleas to Counts Three and Seven and what his position is on the status of the Plea Agreement." (ECF No. 100, at 1.) The Government further asserted that the Indictment remains valid,

> and charges valid § 924(c) counts in Counts Three and Seven (as well as in the two additional 924(c) counts that the Government dismissed in exchange for

---

[2] The Court held that relief in abeyance pending further briefing on the appropriate remedy and therefore the Order states, "Samuels's convictions and sentences on Counts Three and Seven will be vacated." (ECF No. 97 ¶ 2.)

4

> defendant's guilty plea). The United States remains free to pursue the valid charge[s] in the § 924(c) counts charged in Counts Three and Seven, notwithstanding the Plea Agreement's reference to the conspiracy predicate in paragraph 1 of the Plea Agreement.

(*Id.* at 5 (citation omitted).)[3] By Memorandum Order entered on October 15, 2019, the Court directed Defendant to file his response to the Government's October 9, 2019 filing. (ECF No. 101.)

Thereafter, Defendant responded and asserted that:

> The Plea Agreement, including the Government's promise to not further prosecute Mr. Samuels, remains in effect. The Plea Agreement, the Constitution's prohibition on double jeopardy, and collateral estoppel prevent the Government from trying to further prosecute Mr. Samuels in this case. The Court must either resentence Mr. Samuels on the remaining count of conviction (Count One) or enter a corrected judgment reflecting the vacation of the convictions in Counts Three and Seven.

(ECF No. 102, at 1.)

## II. ANALYSIS

Defendant contends that he can utilize § 2255 to vacate § 924(c) convictions and also continue to bind the Government to the terms of the Plea Agreement. The Court disagrees. While Defendant's actions in so doing would not constitute a breach of the Plea Agreement, they would relieve the Government from its obligations pursuant to the Plea Agreement under the frustration of purpose doctrine. *United States v. Johnson*, 420 F. Supp. 3d 462, 473 (E.D. Va.

---

[3] To the extent that the Government asserts that Defendant's convictions in Counts Three and Seven are still predicated on valid Hobbs Act robberies, (ECF No. 100, at 5 (citing *United States v. Cannon*, 778 F. App'x 259 (4th Cir. 2019)), that assertion lacks merit. *See United States v. Johnson*, 420 F. Supp. 3d 462, 465 (E.D. Va. Nov. 22, 2019) (rejecting similar argument). In *Cannon*, "the plea agreement did not omit the substantive predicate; instead, the agreement simply identified the count to which he pled guilty, without identifying the specific conduct upon which the firearm charge was based. (*See* Plea Agreement ¶ 1, ECF No. 23, No. 2:15–cr–121–AWA–RJK.)." *Id.* As was the case in *Johnson*, Defendant's Plea Agreement "specifically omit[s] the substantive Hobbs Act robbery predicates in both [§ 924(c)] counts." *Id.*

5

2019). With the Plea Agreement vacated, it would no longer bind the Government to the Government's prior agreement not to further prosecute Defendant for the conduct in the Indictment. *Id.*

### A. The Plea Agreement Is Voidable Under the Frustration of Purpose Doctrine.

Courts apply the principles of contract law, including the frustration of purposes doctrine, when interpreting plea agreements. *See United States v. Under Seal*, 902 F.3d 412, 417 (4th Cir. 2018) ("When interpreting plea agreements, we draw upon contract law as a guide to ensure that each party receives the benefit of the bargain . . ."); *Johnson*, 420 F. Supp. 3d at 469 (applying the frustration of purposes doctrine to the review of a plea agreement). For the frustration of purpose doctrine to apply, a party must establish the following elements:

> First, the frustrated purpose must have been "so completely the basis of the contract that, as both parties understand, without it the transaction would make little sense." Second, the frustration must be such that the intervening event cannot fairly be regarded as within the risks the frustrated party assumed under the contract. Finally, "the non-occurrence of the frustrating event must have been a basic assumption on which the contract was made."

*Johnson*, 420 F. Supp. 3d at 470 (quoting *United States v. Bunner*, 134 F.3d 1000, 1004 (10th Cir. 1998)). Just as in *Bunner*, the Government can establish the above elements if the Court vacates Defendant's convictions on Counts Three and Seven.

In *Bunner*, after the parties entered into a plea agreement in which defendant pled guilty to a violation of § 924(c), the Supreme Court decided *Bailey v. United States*, 516 U.S. 137 (1995), such that the defendant's conduct no longer violated § 924(c). *Bunner*, 134 F.3d at 1002).[4] Thereafter, the defendant filed a § 2255 motion, which resulted in the vacatur of his 924(c) conviction. *Id.* The Tenth Circuit concluded that the vacatur of that conviction:

---

[4] In *Bailey,* the Supreme Court, "held that the Government must show that a defendant actively employed a gun to support a conviction for use of firearm in violation of § 924(c)" as

6

> ultimately resulted in Defendant being relieved of his obligations under the plea agreement. Therefore, although the parties were technically able to perform according to the letter of the agreement, Defendant's performance, for all practical purposes, became worthless to the Government. This resulted in the underlying purpose of the agreement being frustrated and the basis of the Government's bargain being destroyed. Thus, under the frustration of purpose doctrine, the Government's plea agreement obligations became dischargeable.

*Bunner*, 134 F.3d at 1005.

The Government thereafter elected to be discharged from the agreement, and moved to reinstate the dismissed counts of the indictment, thereby returning the parties to their respective positions before they had entered into the plea agreement. *Id.* The district court granted the Government's motion. *Id.* The Tenth Circuit held that, with respect to the plea agreement, "[a] basic assumption underlying the parties' purposes was their belief that the conduct Defendant pled guilty to amounted to a violation of § 924(c). Absent this assumption, neither party would have entered into the . . . plea agreement." *Id.* Accordingly, "the plea agreement no longer bound the parties. Therefore, no obligation remained which prohibited the Government from reinstating the previously dismissed charges." *Id.* at 1002. In reaching this conclusion, the Tenth Circuit determined, in a footnote, that "a fair construction of the plea agreement before us requires that Defendant and the Government share the risk that a subsequent change in the law may undermine the basis of the agreement." *Id.* at 1005 n.3. The Tenth Circuit, under the frustration of purpose doctrine, accordingly affirmed the district court's decision allowing the Government to reinstate the dismissed charges. *Id.* at 1005.

Here, the Court finds that vacating Defendant's convictions on Counts Three and Seven would render the Plea Agreement voidable under the frustration of purpose doctrine. First, vacating Defendant's § 924(c) convictions for Counts Three and Seven undermines the main

---

that statute was then written. *United States v. Green*, 139 F.3d 1002, 1003 (4th Cir. 1998) (citing *Bailey*, 516 U.S. at 144).

7

objectives of the Plea Agreement — a conviction of those crimes and that Defendant serve a significant term of imprisonment for those crimes.[5] *See United States v. Green*, 139 F.3d 1002, 1004 (4th Cir. 1993) (citing *Bunner*, 134 F.3d 1000)). Second, like in *Johnson*,

> both parties assumed that [Defendant's] conduct was, and would continue to be, a violation of § 924(c). And like the Tenth Circuit, this Court believes that *[Defendant] and the Government must "share the risk that a subsequent change in the law may undermine the basis of the agreement," rather than have the Government solely bear the risk. See Bunner*, 134 F.3d at 1005 n.3. By finding that both parties share the risk, the Court returns both parties to equal footing, rather than leaving the Government entirely bereft of any benefit of its bargain . . . .

420 F. Supp. 3d at 473 (emphasis added). And lastly, "[a] basic assumption underlying the parties' purposes was their belief that the conduct [Defendant] pled guilty to amounted to a violation of § 924(c). Absent this assumption, neither party would have entered into the . . . plea agreement," nor would the Court have accepted it. *Bunner*, 134 F.3d at 1005.

Defendant here, like the defendant in *Johnson*, relies heavily upon the decision in *United States v. Sandoval-Lopez*, 122 F.3d 797 (9th Cir. 1997) for the proposition that the Government bears the full risk for any change in the law.[6] In *Sandoval-Lopez*, the district court found that the

---

[5] As noted above, the Court sentenced Defendant to 384 months of imprisonment on Counts Three and Seven.

[6] Defendant also relies on language from *United States v. Archie*, which states that "[a] plea agreement, like any contract, allocates risk. And the possibility of a favorable change in the law occurring after a plea is one of the normal risks that accompany[ies] a guilty plea." 771 F.3d 217, 222 (4th Cir. 2014) (citations omitted). *Archie* is inapposite. In that case, the defendant pled guilty pursuant to a plea agreement which dismissed several serious charges in exchange, for among other things, the defendant's waiver of his right to appeal his sentence. Nevertheless, the defendant appealed the district court's judgment, based on the Supreme Court's decision in *Alleyne v. United States*, 570 U.S. 99 (2013), a case that changed the law four months after the defendant's sentencing. *Id.* at 221. The defendant sought to retain all the benefits that he received by the plea agreement, while reneging on his agreement not to appeal his sentence. The Fourth Circuit concluded that the defendant could not do so, because he had bargained away his right to appeal his sentence. "Thus, the Fourth Circuit in *Archie* was trying to uphold the benefit of each party's bargain." *Johnson*, 420 F. Supp. 3d at 470. The Fourth Circuit did not address the frustration of purpose doctrine or how risk would be allocated in circumstances if the law

8

defendants had breached their non-written plea agreements by challenging their convictions after *Bailey*, that the Government was no longer bound by the terms of the plea agreement after the defendants' convictions were vacated on their § 2255 motions, and that the Government was allowed to reinstate the dismissed charges. 122 F.3d at 799.

On appeal, the Ninth Circuit reversed, holding that the defendants were not barred under their plea agreements from challenging the validity of their convictions under § 2255, and were accordingly not in breach of their agreements. *Id.* at 801–02. That court further held that the Government bore the risk that a change in the law would invalidate the defendants' convictions, particularly because it failed to provide in the agreements for the right to reinstate the dismissed charges if a change in the law occurred. *Id.* Consequently, the court found that the Government was barred from reinstating the dismissed charges. *Id.* at 802.

This Court agrees with the Tenth Circuit's observation in *Bunner* that the court in *Sandoval-Lopez*, "stopped too soon." *Bunner*, 134 F.3d at 1004. The *Bunner* Court found that the Ninth Circuit's decision with respect to specific enforcement of the agreements "was premature" because that court "made no explicit determination regarding the effect of the defendants' successful § 2255 motion on the Government's plea agreement obligations," finding that those obligations "were likely altered." *Id.* The Tenth Circuit then held, contrary to the decision in *Sandoval-Lopez*, that the Government could reinstate the dismissed charges, despite also finding that the district court had erred in holding that the defendant breached his obligations under the agreement. *Id.* at 1004–05.

As explained above, under the frustration of purpose doctrine, the Government's obligations under the plea agreement would become dischargeable should Defendant

---

changed such that the very conduct to which the defendant pled guilty no longer constituted a crime.

9

successfully vacate his § 924(c) convictions by way of his § 2255 Motion. *Johnson*, 420 F. Supp. 3d at 472 (citing *United States v. Moulder*, 141 F.3d 568, 571–72 (5th Cir. 1998)); *see also Hunter v. United States*, 149 F.3d 1187 (8th Cir. 1998) (Table) (affirming denial of § 2255 motion and stating that district court did not err in allowing the Government to reinstate previously dismissed charges after successful § 2255 motion). Then, as explained in *Johnson*, the Government could move to reinstate the Indictment under 18 U.S.C. § 3926(a).[7] *Johnson*, 420 F. Supp. 3d at 469.

### B. Defendant's Constitutional Arguments Against Further Prosecution

#### 1. Vindictive Prosecution

At this juncture, the Court will dispose of Defendant's remaining contentions that further prosecution of him for the charges in the Indictment would violate his constitutional rights. First, citing *United States v. Adams*, 814 F.3d 178 (4th Cir. 2016), Defendant contends that the Government's action in seeking to further prosecute him constitutes vindictive prosecution.[8]

---

[7] That statute provides, in pertinent part, that the District Court "shall" reinstate "any counts of an indictment or information that are dismissed pursuant to a plea agreement" if:

> (1) the counts sought to be reinstated were originally filed within the applicable limitations period;
> (2) the counts were dismissed pursuant to a plea agreement approved by the District Court under which the defendant pled guilty to other charges;
> (3) the guilty plea was subsequently vacated on the motion of the defendant; and
> (4) the United States moves to reinstate the dismissed counts within 60 days of the date on which the order vacating the plea becomes final.

18 U.S.C. § 3296(a).

[8] To establish prosecutorial vindictiveness, a defendant "must show, through objective evidence, that (1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus." *United States v. Jackson*, 327 F.3d 273, 294 (4th Cir. 2003) (quoting *United States v. Wilson*, 262 F.3d 305, 314 (4th Cir. 2001)). Neither element exists here.

10

This contention lacks merit. *See Johnson*, 420 F. Supp. 3d at 473 n.7 (rejecting similar vindictive prosecution claims).

In *Adams*, the Fourth Circuit declined to reinstate the dismissed charges of the indictment under § 3296, holding that the Government came "dangerously close to punishing [the defendant] for pursuing what [the court had] ultimately determined to be a *meritorious claim of actual innocence*. 'To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort.'" *Id.* at 185 (quoting *United States v. Goodwin*, 457 U.S. 368, 372, (1982)). There, the Government suggested at oral argument that if the court did vacate the defendant's conviction, it would thereafter seek to reinstate the dismissed counts. However, in *Adams*, "[t]he Government indicated it may seek *to add [an] additional fifty years even though nothing in [that] opinion [required] the district court to lessen [the defendant's] current sentence*," if the defendant continued to pursue his actual innocence claim and was found actually innocent. *Id.*

In contrast, in this case, the Court has not found Defendant actually innocent of violating the conduct charged in Counts Three and Seven, and success on his § 2255 Motion would require the Court to lessen Defendant's sentence by 384 months. Further, the Government has not suggested that it would pursue additional punishment if Defendant did not withdraw his § 2255 Motion. Rather, the Government has only sought the benefit of its original bargain and asked that Defendant replead to Counts Three and Seven with the valid crime of violence predicates set forth in the Indictment. Not surprisingly, given the Government's lack of leverage, Defendant balked at doing so. Given this impasse, as set forth *infra* Part III, the Court concludes that vacating Defendant's convictions on all counts and returning the parties to their same places before entering the Plea Agreement constitutes the proper remedy if Defendant continues to pursue his § 2255 Motion. *See United States v. Stitt*, 552 F.3d 345, 355 (4th Cir.

2008) (observing that under § 2255 district courts have a "'broad and flexible' power . . . to fashion an appropriate remedy" (quoting *United States v. Hillary*, 106 F.3d 1170, 1171 (4th Cir. 1997))); *United States v. Lewis*, 138 F.3d 840, 842 (10th Cir. 1998) (concluding "that the broad and flexible remedial power conferred on the district court by section 2255 together with the interdependence of the various counts disposed of in a plea agreement . . . provide the district court with authority to vacate an entire plea agreement when a conviction that is part of the plea package is vacated"); *United States v. Maybeck*, 23 F.3d 888, 894–95 (4th Cir. 1994) (remanding for resentencing, because the defendant was improperly sentenced as a career offender, but recognizing that the district court may find it appropriate to "vacate the guilty plea and order [the parties] to enter into a new agreement" and "if the parties fail to reach agreement, they should be ordered to proceed to trial on an appropriate indictment"). Given these circumstances, the Court rejects Defendant's suggestion that subjecting him to any further prosecution supports an inference of unconstitutional prosecutorial vindictiveness. *See Johnson*, 420 F. Supp. 3d at 437 n.7 (finding that the defendant had not established prosecutorial vindictiveness when Government only sought to reinstate original counts of a dismissed but valid indictment (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)).

### 2. Double Jeopardy

Nor does Defendant's contention that the Double Jeopardy Clause bars any retrial on Counts Three and Seven have any merit.[9] *See Johnson*, 420 F. Supp. 3d at 472 (discussing Double Jeopardy Clause in context of vacated counts (citing *Green*, 139 F.3d at 1004–05)).

---

[9] The Double Jeopardy Clause provides a "defendant three basic protections: [(1)] [I]t protects against a second prosecution for the same offense after acquittal. [(2)] It protects against a second prosecution for the same offense after conviction. [(3)] And it protects against multiple punishments for the same offense." *Ohio v. Johnson*, 467 U.S. 493, 497–98 (1984) (second alteration in original) (internal quotation marks omitted) (citation omitted).

"[T]the Double Jeopardy Clause's general prohibition against successive prosecutions does not prevent the Government from retrying a defendant who succeeds in getting his first conviction set aside, through direct appeal or collateral attack, because of some error in the proceedings leading to conviction." *Lockhart v. Nelson*, 488 U.S. 33, 38 (1988) (citations omitted). "[W]here a defendant by his own motion causes the withdrawal of his guilty plea, he has waived his right not to be put in jeopardy a second time." *United States v. Jerry*, 487 F.2d 600, 606 (3d Cir. 1973) (citation omitted). Fourth Circuit precedent, including *United States v. Green*, 139 F.3d 1002 (4th Cir. 1998), makes clear that the change in the law here, allowing Defendant to set aside his convictions, constitutes the sort of trial error that permits further prosecution on those charges.[10]

In *Green*, the defendant "pleaded guilty to count 2 of a five-count indictment, admitting that he 'did knowingly use and carry a semi-automatic assault weapon . . . during and in relation to a drug trafficking crime.'" *Green*, 139 F.3d at 1003 (omission in original) (quoting 18 U.S.C. § 924(c) (1994)). Thereafter, "[t]he Government dismissed the remaining counts of the indictment, and the court sentenced Green to a ten-year term." *Id.* Subsequently, Green filed a 28 U.S.C. § 2255 motion wherein he claimed that in light of *Bailey v. United States*, 516 U.S. 137 (1995), the evidence was insufficient to support his guilty plea. *Id.* The district court granted the § 2255 motion. *Id.* The Government reindicted Green. *Id.* The new "indictment was predicated on the original indictment except for the addition of a count which alleged

---

[10] The Fourth Circuit has concluded "that where a reviewing court determines that the evidence presented at trial has been rendered insufficient only by a post-trial change in law, double jeopardy concerns do not preclude the Government from retrying the defendant." *United States v. Ford*, 703 F.3d 708, 711 (4th Cir. 2013) (citations omitted). This is so because "[a]ny insufficiency in the proof was caused by the subsequent change in law . . . not the Government's failure to muster evidence." *Id.* (quoting *United States v. Ellyson*, 326 F.3d 522, 533 (4th Cir. 2003)).

13

another violation of 18 U.S.C. § 924(c). Specifically, count 2 in the original indictment, to which Green pleaded guilty, [was] identical to count 3 in the [new] indictment." *Id.* Green challenged the new indictment on double jeopardy grounds. *Id.*

With respect to the count in the new indictment that mirrored the count in the former indictment to which Green had pled guilty and successfully challenged in his § 2255 motion, the Fourth Circuit observed:[11]

> Ordinarily, a judgment that the evidence was insufficient to support a conviction warrants a judgment of acquittal rather than a new trial. *See Burks v. United States*, 437 U.S. 1, 17 (1978). However, *the Double Jeopardy Clause does not preclude retrial of a defendant whose conviction was set aside because of trial error. See id.* at 14. Vacation of a judgment based on *Bailey* is akin to a reversal for trial error. The district court originally found that Green admitted sufficient facts to support a guilty plea and conviction under § 924(c) according to circuit precedent later invalidated by *Bailey*. Green's voluntary choice to contest the *sufficiency of his plea was not based on his innocence but on error pertaining to the elements of his offense.* As such, his retrial does not reflect the evils at which the Double Jeopardy Clause is aimed.

*Id.* at 1004 (emphasis added) (internal parallel citations omitted) (citing *Burks*, 437 U.S. at 15–16). The Fourth Circuit agreed with other courts "that the Double Jeopardy Clause does not prohibit punishment of defendants who have successfully moved pursuant to 28 U.S.C. § 2255 to vacate their sentences on the basis of *Bailey*." *Id.* at 1005 (citing *Bunner*, 134 F.3d at 1005; *United States v. Podde*, 105 F.3d 813, 817–18 (2d Cir. 1997)). Here, like the defendant in *Green*, a "change in the law did not compel [Defendant] to attack his conviction — it simply gave him the opportunity to do so," *id.* (citation omitted), and "[t]he Double Jeopardy Clause

---

[11] The Fourth Circuit summarily rejected Green's challenge to the counts of the new indictment which pertained to "offenses to which Green did not plead guilty" and observed that "[a] jury was never impanelled to try these counts; the court never received evidence on these counts; Green was never acquitted of these counts; and Green was never sentenced for these counts." *Green*, 139 F.3d at 1004.

14

does not relieve a defendant from the consequences of his voluntary choice[]." *Id.* (quoting *Ricketts v. Adamson*, 483 U.S. 1, 11 (1987)).

Defendant contends that the Supreme Court's decision in *Evans v. Michigan*, 568 U.S. 313 (2013), demonstrates that his further prosecution on Counts Three and Seven would violate the Double Jeopardy Clause. But, that case has no application to Defendant's circumstances. In *Evans*, the Supreme Court addressed "whether retrial is barred when a trial court grants an acquittal because the prosecution had failed to prove an 'element' of the offense that, in actuality, it did not have to prove." *Id.* at 317 (citation omitted). The Court first noted that, for double jeopardy purposes, "[t]he law attaches particular significance to an acquittal . . . ." *Id.* at 319 (alteration in original) (quoting *United States v. Scott*, 437 U.S. 82, 91 (1978)). The Court found that the issue before it resembled the one presented in *Arizona v. Rumsey*, 467 U.S. 203 (1984): it "involve[d] an antecedent legal error that led to an acquittal because the State failed to prove some fact it was not actually required to prove." *Evans*, 568 U.S. at 321. Although *Evans* involved the addition of a nonessential element, while *Rumsey* involved a misinterpretation of an element, it did not matter for purposes of the double jeopardy analysis. *Id.* at 321–22.

Defendant contends that setting aside his convictions in Counts Three and Seven for legal insufficiency fits within the broad definition of acquittal in *Evans* and prohibits his retrial on those counts. Defendant, however, fails to direct the Court to any persuasive authority that *Evans* precludes further prosecution in circumstances, such as his, where the defendant pleads guilty and the Court subsequently vacates his convictions. *See Bravo-Fernandez v. United States*, 137 S. Ct. 352, 363 (2016) (reiterating that when a "[w]hen a conviction is overturned on appeal [or in post-conviction proceedings], '[t]he general rule is that the [Double Jeopardy] Clause does not bar reprosecution.'" (third and fourth alteration in original) (quoting *Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294, 308 (1984))). Moreover, *Green* and *Ellyson*

make clear that the error that occurred here constitutes the sort of trial error that does not preclude further prosecution.

Lastly, Defendant contends that *Green* does not apply, because he challenges only his convictions on Counts Three and Seven, not the Plea Agreement or his guilty pleas to those counts. This is simply not so. *Johnson*, 420 F. Supp. 3d at 469 ("[U]pon granting Defendant's § 2255 Motion and vacating his convictions . . . the Court has effectively vacated the Defendant's guilty plea." (citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1969))).

> [T]he basis for the bargain between the Government and [Defendant] was not [Defendant] appearing in court on a particular day and engaging in a ritualistic dialogue. *See* Fed. R. Crim. P. 11. Instead, the basis for the bargain was an agreement regarding the charges to which [Defendant] would plead and the amount of time [Defendant] would be required to serve.

*United States v. Lewis*, 964 F. Supp. 1513, 1518 (D. Kan. 1997) (citation omitted), *aff'd*, 138 F.3d 840 (10th Cir. 1998).

In this case, the parties assumed that, for Counts Three and Seven, Defendant would serve a mandatory consecutive sentence of 384 months of imprisonment. "It is only by serving that consecutive [384-month] sentence that [Defendant] could be deemed to have fully performed his obligations under that part of the plea agreement." *Id.* (citation omitted); *see Green*, 139 F.3d at 1004 ("At the heart of the parties' exchange is the agreement that the defendant will substantially serve the sentence imposed on the basis of conduct that the defendant has admitted." (citing *Bunner*, 134 F.3d at 1000)). "By attacking a key component in the sentencing plan envisioned by the plea agreement, [Defendant] is, in effect, attacking the plea agreement itself." *Lewis*, 964 F. Supp. at 1518 (citation omitted). Therefore, *Green* applies, and the vacatur of his convictions does not bar further prosecution.

16

### III. CONCLUSION

In fashioning an appropriate remedy under § 2255, the Court strives to place a defendant "in exactly the same position in which he would have been had there been no error in the first instance." *United States v. Stitt*, 552 F.3d 345, 355 (4th Cir. 2008) (quoting *United States v. Hillary*, 106 F.3d 1170, 1172 (4th Cir. 1996)). In this regard, the Court rejects Defendant's assertion that he can challenge Counts Three and Seven with impunity. *See United States v. Lewis*, 138 F.3d 840, 841 (10th Cir. 1998) (a district court has "authority to vacate an entire plea agreement when a conviction that is part of the plea package is vacated"). Defendant may elect to proceed on his challenge to those counts, but if he does so, the Court will vacate the entire Plea Agreement and all of Defendant's counts of conviction. *See id.* (rejecting defendant's contention "that because he did not seek vacation of his plea, the district court was without authority to direct him to choose between vacating the entire plea agreement or having his section 2255 motion denied").

Accordingly, Defendant's § 2255 Motion (ECF No. 80) will be DENIED IN PART and GRANTED IN PART. Treated as a motion to vacate only his § 924(c) convictions, the § 2255 Motion (ECF No. 80) will be DENIED. Treated, however, as a motion to withdraw his plea, the Motion is GRANTED ON THE CONDITION that Defendant give notice of his intent to withdraw his plea in writing within sixty (60) days of the date of entry hereof. Should Defendant decline to withdraw his plea, the condition will fail and the Court will treat the original pleas, convictions and sentences as reaffirmed. A reaffirmation will be treated as a knowing, intelligent, and voluntary relinquishment of the right to ever complain that his convictions were in violation of *Johnson v. United States*, 135 S. Ct. 2551 (2015), *United States v. Davis*, 139 S. Ct. 2319 (2019), and *United States v. Simms*, 914 F.3d 229 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 304 (2019) or related cases.

Accordingly, within sixty (60) days, Defendant shall file his position, which shall be signed by both Defendant and Defendant's counsel, indicating whether he intends to vacate the plea agreement or reaffirm the convictions for Counts Three and Seven.

An appropriate Order shall issue.

The Clerk is directed to file this Memorandum Opinion electronically and send a copy to all counsel of record.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Date: APRIL 16, 2020